[Crim. No. 733. Second Appellate District, Division One.—August 2, 1920.]

THE PEOPLE, Respondent, v. ERNEST CARSON, Appellant.

[1] CRIMINAL LAW—MURDER—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—LACK OF DILIGENCE—FAILURE OF PROSECUTION TO CALL WITNESS.—In a prosecution for murder, it is not error to deny a motion for a new trial on account of newly discovered evidence, where the affidavits show that prior to the trial the defendant had knowledge of the witnesses whose evidence he desires to present on the new trial, and there is not any sufficient showing of diligence in an effort to produce them at the trial; and the fact that defendant's attorney learned that one of such witnesses had been subpoenaed by the prosecution, but the prosecution failed to call for the testimony of that witness, furnishes no excuse for the defendant's failure to use such witness if he desired to have his testimony in the case.

[2] ID.—EVIDENCE—CLOTHING OF DEFENDANT—WEIGHT — ADMISSIBILITY.—In a prosecution for murder, objections to the introduction in evidence of certain exhibits, consisting of a straw hat and the trousers of a suit discovered on the premises at the defendant's home five days after his arrest, such as, that the time of their discovery was too remote from the date of the crime, that the defendant was not in control of the premises at the time of their discovery, and that there was a possibility of other unknown persons having visited the defendant's home in the meantime, etc., all go to the question of the weight of the evidence and do not affect its admissibility.

[3] ID.—EFFECT OF ALIBI—PROPER INSTRUCTION.—In a prosecution for murder, an instruction concerning the effect of an alibi, wherein the jury are instructed that, while they are not to hesitate at giving such defense the full weight to which when established it is justly entitled, still they "are to scrutinize the testimony offered in the support of an alibi with care," is not open to the objection that it unwarrantedly diminishes the weight of the testimony given for the defendant and interferes with the function of the jury, nor that it is unfair and prejudicial to the defendant, whose sole defense rests upon an alibi, nor that it disturbs and modifies the rule of evidence which requires that the defendant's guilt shall be established beyond a reasonable doubt.

[4] ID.—SEPARATION OF JURY—LACK OF PREJUDICE.—Separation of the jury, after submission of the cause and while they are still deliberating, is not a sufficient ground for demanding a new trial, where such separation was made while the jurors were being conveyed in two automobiles to dinner and they were all in the sight and custody of the deputy sheriff and the clerk of the court who were sworn to take charge thereof, and the one juror who was in charge of the clerk at no time conversed with any person on any subject connected with the cause.

[5] ID. — EXPERIMENTS BY DISTRICT ATTORNEY WITH REVOLVER — CHANGE OF TESTIMONY—EFFECT OF.—The action of the deputy district attorney in obtaining possession of a certain revolver, which was an exhibit in the case, without leave of court and without the knowledge or consent of the defendant, and making certain experiments with ammunition, as a result of which he gave testimony different from that which he had given at a former trial of the case, only affects the weight to be accorded to his testimony, but such action does not constitute misconduct.

[6] ID.—MISCONDUCT OF DISTRICT ATTORNEY—WHEN NOT GROUND FOR REVERSAL.—If no assignment of error is made at the time when objectionable statements are made in argument, and no request is made that the court instruct the jury to disregard the language of the prosecutor, a reversal will not be had for such misconduct.

[7] ID.—CONFLICTING AFFIDAVITS—DECISION OF TRIAL COURT—APPEAL. The decision of the trial court concerning alleged misconduct on the part of the deputy district attorney in holding improper conversations with members of the jury during the trial will not be disturbed on appeal where the affidavits submitted in support of the charges were directly denied by counter-affidavits.

---

4. Effect of separation of a jury, notes, 60 **Am. Rep.** 73; 103 **Am. St. Rep.** 155; 1 **Ann. Cas.** 287; **Ann. Cas.** 1914A, 737; **Ann. Cas.** 1916A, 253.

APPEAL from a judgment of the Superior Court of Los Angeles County. Gavin W. Craig, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. Burton Ceruti for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and Thomas A. Wood for Respondent.

CONREY, P. J.—The defendant having been convicted of the crime of murder of the first degree and sentenced to imprisonment for life, appeals from the judgment and from an order denying his motion for a new trial.

At about 10 o'clock on the night of September 25, 1919, two men entered a street-car which was approaching the city of Los Angeles on its way from the city of Redondo. A controversy arose between these men and the motorman and conductor of the car, which resulted in the ejection of the strangers from the car. As the motorman was about to start the car these men, armed with revolvers, fired several shots and as a result thereof the motorman, George E. Sleeper, was killed. The defendant and another man, who appears to have been the defendant's twin brother, were accused of this crime and were tried separately. Counsel for appellant, in stating the questions presented on this appeal, admits that the circumstances of the killing were not in dispute; that no mitigating circumstances were offered, and that "there was but one issue of fact, capable of the following legal distinction: 1. Identification of the defendant. 2. Alibi."

Several witnesses identified the defendant, and testified that he was one of the two men on the car who were implicated in the above-mentioned transactions. The record leaves no doubt that their testimony is sufficient to justify the verdict so far as the same depends upon the identification of the defendant. The testimony of other witnesses produced by the defendant, and tending to show that defendant was present at a dance held in another section of the city at the very time when Sleeper was killed, has no other effect than to produce a conflict in the evidence which identified the defendant as one of the men present at the

time and place of the murder. It, therefore, must be held that the evidence is altogether sufficient to sustain the verdict.

[1] Appellant contends that the court erred in denying his motion for a new trial on account of newly discovered, evidence. The nature of this evidence is shown by the affidavits of Abraham Gipson and F. A. Lorentz, each of which states facts asserted to be known to the witness, which facts are in aid of the defendant's defense of alibi. From the affidavit of the defendant's attorney it appears that, prior to the trial, he had information that Gipson was on the Long Beach car which defendant claims brought him and other witnesses to the city that night; nevertheless Gipson was not subpoenaed by the defendant to testify in the case. The fact that defendant's attorney "learned that the said Abraham Gipson had been subpoenaed on the part of the prosecution," and that the prosecution failed to call for the testimony of that witness, furnishes no excuse for the defendant's failure to use the witness if he desired to have his testimony in the case. There is not with respect to either of these witnesses any sufficient showing of diligence in an effort to produce them at the trial.

[2] Next it is contended that the court erred in overruling the defendant's objections to the admission in evidence of certain exhibits, consisting of a straw hat and the trousers of a black and white check suit, offered by the prosecution. These clothes, according to the testimony of witnesses, were discovered on the premises at defendant's home on the twenty-second day of October, 1919, five days after defendant's arrest. There is testimony tending to show that a hat and suit of clothes of similar description to these exhibits were worn by the defendant at the time and place of the killing of Sleeper. The objections to the use of these exhibits as evidence, such as that the time of their discovery was too remote from the date of the crime, and that the defendant was not in control of the premises at the time of their discovery, and that there was a possibility of other unknown persons having visited the defendant's home in the meantime, etc., all go to the question of the weight of the evidence and do not affect its admissibility.

[3] Appellant complains of that portion of the instructions concerning the effect of an alibi, wherein the jury

were instructed that, while they were not to hesitate at giving to such defense the full weight to which when established it is justly entitled, "still you are to scrutinize the testimony offered in the support of an alibi with care." Exception is taken on the grounds that the language quoted unwarrantably diminished the weight of the testimony given for the defendant and interfered with the functions of the jury; that it was manifestly unfair and prejudicial to the defendant, whose sole defense rested upon an alibi; that it disturbed and modified the rule of evidence which requires that the defendant's guilt shall be established beyond a reasonable doubt. We think that the instruction is not fairly subject to these objections; in fact, it has been definitely approved by the supreme court. (*People* v. *Lee Gam*, 69 Cal. 552, [11 Pac. 183].)

[4] It is next suggested that appellant is entitled to a new trial because, as appears by affidavits filed on the motion for new trial, the jury was allowed to separate after the cause had been submitted and before the rendition of their verdict. It appears that after the cause had been submitted to the jury, and while they were still deliberating, they were taken out to dinner; that they were taken from the courthouse to the hotel in automobiles; that the first automobile was insufficient in size to carry all the members of the jury; that thereupon eleven of the jurors, together with the deputy sheriff sworn to take charge of the jury, occupied the first automobile, and the remaining juror, together with the clerk of the court (also sworn as an additional officer to assist in conducting the jury to and from said hotel), occupied another automobile, making the same trip. The uncontradicted affidavits of the clerk and of the juror are to the effect that while being so conveyed the said juror was at all times in the presence of the clerk of the court; that the juror at no time conversed with any person on any subject connected with the cause. It thus appears that there was affirmative proof on behalf of the people explaining the separation of the jury and showing that the defendant was not prejudiced thereby. This being the case, the separation of the jury under the circumstances is not a sufficient ground for demanding a new trial. (*People* v. *Cord*, 157 Cal. 567, 571 [108 Pac. 511].)

[5] Appellant complains of alleged misconduct of Deputy District Attorney Fricke in obtaining possession of a certain Smith & Wesson revolver (which was an exhibit in the case), without leave of court and without the knowledge or consent of the defendant, and making certain experiments with ammunition. As a result of those experiments Fricke gave testimony different from that which he had given at a former trial of this case. Appellant further charges the district attorney with misconduct in making certain statements to the jury in the course of his argument. As to the conduct of Fricke in taking away the revolver for the purposes of experiment prior to giving his testimony at the second trial, its only effect would have relation to the weight to be accorded to his testimony. [6] As to the second matter, it is well settled that if no assignment of error is made at the time when objectionable statements are made in argument, and no request is made that the court instruct the jury to disregard the language of the prosecutor, a reversal will not be had for such misconduct. (*People* v. *Warr,* 22 Cal. App. 663, [136 Pac. 304].)

[7] It is claimed also that the district attorney was guilty of misconduct in that, during the trial, the deputy district attorney held improper conversations with members of the jury; and particularly that on one occasion, while the jurors were in the corridor of the courthouse, he said to one of the jurors: "It is very funny. People tell us one thing outside and get in here and tell us a different thing." Affidavits in support of these charges were submitted on behalf of the defendant. These were directly denied by counter-affidavits. Under such conflicting evidence, the decision of the trial court concerning the matter will not be disturbed on appeal.

The judgment and order are affirmed.

Shaw, J., and James, J., concurred.