[Crim. No. 555.  Third Appellate District.—May 6, 1921.]

THE PEOPLE, Respondent, v. ARTHUR BARRIOS, Appellant.

[1] CRIMINAL LAW—BURGLARY—INFORMATION—CHARGE OF LARCENY—LACK OF PREJUDICE.—A defendant tried and convicted of burglary under an information charging both larceny and burglary in the same count was not prejudiced by the averment of larceny, since proof of the larceny would properly have been made in the absence of such allegation.

[2] ID.—ENTRY IN NIGHT-TIME—SUFFICIENCY OF EVIDENCE.—In a prosecution for burglary, evidence that a store had been entered between 6 o'clock in the evening and 7:30 the next morning and large quantities of merchandise removed, sufficiently showed that the entry was in the night-time, although it did not demonstrate that the entry was not made during the few minutes between 6 o'clock in the evening and sunset.

[3] ID.—EVIDENCE—PROOF OF CORPUS DELICTI.—In a prosecution for burglary, the *corpus delicti* was sufficiently proven to render the confession of the defendant admissible by the production of evidence showing that a store was entered between 6 o'clock in the evening and 7:30 the next morning and that defendant when arrested before daylight was wearing a coat taken from the store

---

3. Possession of stolen property as evidence of burglary, note, 19 Ann. Cas. 1281.

and that other coats were found in a room designated by the defendant to the arresting officer.

[4] ID.—CONFESSION—VOLUNTARY TESTIMONY ON 'TRIAL OF DEFENDANT JOINTLY CHARGED.—Where the defendant during the progress of the trial of a defendant jointly charged with the same burglary, at the request of his own counsel, who represented both defendants, was brought into court and in response to questions propounded by his counsel testified in detail to the commission of the burglary and his part in it, his testimony was voluntary and admissible in his own prosecution as a confession.

[5] ID.—TESTIMONY OF OFFICIAL REPORTER — REFERENCE TO NOTES. — In such prosecution, there was no error in permitting the official reporter who took down the testimony of the defendant in shorthand in the other prosecution to refresh his memory from his notes, in relating the testimony to the jury.

[6] ID.—INFORMATION—BURGLARY IN NIGHT-TIME—FORM OF VERDICT—BURGLARY IN SECOND DEGREE — REQUEST PROPERLY REFUSED. — Where an information charged the commission of a burglary in the night-time, it was not error to fail to give the jury a form of verdict of burglary in the second degree, for such a verdict would have been void.

[7] ID.—JURY—SEPARATE ROOMS FOR MALE AND FEMALE MEMBERS.—Section 1135 of the Penal Code, as amended, requiring a separate room for female members of a jury must be read with the amendment to section 1128, which provides for separate rooms for male and female members, and when read together they are in harmony with the law that the jury must be kept together during their deliberations.

APPEAL from a judgment of the Superior Court of Merced County and from an order denying a new trial. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

Terry W. Ward for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant and M. Jiminez, Ignacio Blanco, and Jacinto Tappio were jointly charged with burglary "in the night-time" of the merchandise store of L. A. Reid, at Atwater, in Merced County. The information charges, in appropriate language, that the alleged entry by the defendants was made with intent to commit grand

52 Cal. App.—34

larceny and then, in the same count, it is averred that the defendants "did then and there take, steal and carry away from said store goods, wares and merchandise belonging to said L. A. Reid of the value of eleven hundred dollars." Jiminez entered a plea of guilty. The defendant and Blanco and Tappio demurred to the information on the ground, among others, that it charges more than one offense in a single count. The demurrer was overruled. Blanco and Tappio were tried jointly and acquitted. Thereafter the defendant Barrios was tried and convicted of "burglary in the first degree." The defendant duly moved in arrest of judgment and for a new trial, both of which motions were denied.

On his appeal defendant assigns many alleged errors.

[1] The information charged larceny in the same count. with the charge of burglary. No confusion of issues at the trial resulted from the double charge. The defendant was tried on the charge of burglary. The jury returned a verdict of "guilty of burglary in the first degree." Had the jury found the defendant guilty "as charged," without designating the crime, the duplicity complained of would present a more serious question. Under a charge of burglary with intent to commit larceny it is always permissible to show a consummated larceny in proof of such intent. Therefore, the averment of larceny could in nowise prejudice the rights of the defendant, because proof of such larceny would properly have been made in the absence of such allegation. Judgments are not to be set aside for mere technical errors not resulting in a miscarriage of justice.

[2] Independent of the defendant's confession, the evidence shows the following facts: The building entered was closed and the doors locked at 6 o'clock on the evening of September 10th; at 7:30 the next morning the screen of a window, intact the evening before, was found cut and the window open, the rear door open and large quantities of merchandise, in place at the time the store was closed as stated, were missing; the defendant was arrested in the city of Fresno at 3 o'clock in the morning of September 11th and then had on his person a mackinaw which had been taken from the building, and he remained silent when asked where he obtained the mackinaw; at the time

of his arrest the defendant was in the company of Jiminez, who also had on one of the stolen mackinaws; the defendant and Jiminez told the arresting officer that they were going to a certain room to sleep, and about a half hour later the officer found three more of the stolen mackinaws in the room designated; the greater part of the stolen goods were found in a ditch eight miles north of Fresno. This evidence abundantly shows that a burglary was committed and tends strongly to connect the defendant with the crime. It does not demonstrate that the entry was not made during the few minutes between 6 o'clock in the evening and sunset of September 10th. Demonstration, however, is not required. Proof of the time of entry in this case is more certain than that in the case of *People* v. *Schafer,* 161 Cal. 579, [119 Pac. 920], where it is stated that the claim of insufficiency of the evidence to show entry in the night-time was without foundation. **[3]** The foregoing testimony was all produced before the admission of the defendant's alleged confession, and, hence, disposes of the contention that it was error to admit the confession before proof of the *corpus delicti*.

**[4]** Counsel for defendant in this case conducted the defense of Blanco and Tappio on their trial on the same charge. During the progress of that trial, on the order of the court, and at the request of counsel for Blanco and Tappio, the defendant Barrios was brought into court, from the county jail where he was confined, for the purpose of testifying. The defendant Barrios thereupon, in response to questions propounded by his present counsel, testified in detail to the commission of the burglary and his own part in it. The testimony so given was taken down in shorthand by the official reporter, who at the trial of Barrios, and over the objection of his counsel, was permitted to relate such testimony to the jury. It is objected that this was in effect compelling the defendant to be a witness against himself, and that, treating the testimony as a confession of guilt, it was not shown to have been voluntary. If the testimony was voluntarily given, it was a waiver of the constitutional privilege, so that the two objections are in effect the same.

As stated, at the trial of his codefendants, Barrios was called and examined by his then and present attorney.

During his examination the following occurred: "Mr. Ward: Q. Since you have been in the county jail, have you had any inducements or threats made to you, if you gave testimony in this case? A. No, sir. Q. Nobody told you you would get probation if you testified? A. No, sir; I was told by the district attorney here Tuesday morning, the 12th, he called me up to the office and he told me if I was going to testify here in court; I told him I was; then, I told him what I was going to testify to; I told him I was going to testify to the truth and he told me, what was that? Then, I began telling him what was the truth; he told me if I would say that, he was going to have me charged with perjury and send me up on two different counts, one to fourteen for burglary and one to fourteen for perjury. Q. He told you if you testified that Blanco and Tappio were not with you, that he would have you prosecuted for perjury; is that it? A. Yes, sir. Q. What did you say to him about that? A. I told him I did not care; I was going to tell the truth if they sent me up for life. I did not care."

He was cross-examined as follows: "Q. (By Mr. Landram.) I believe, Mr. Barrios, as you have testified in response to Mr. Ward, that no promises have been made to you by me, in order to get you to testify in this case, promises of reward or anything of that kind? A. No, sir, I have not been promised any reward. The sheriff had me out there one day and he said to me, of course he asked me what I was going to do; of course, it seems like he wanted me to say that Tappio and Blanco were with us, when we committed this burglary; I told him they were not; so he told me, why was I protecting them and be sent to the penitentiary; that I had not good health, me and Jiminez were in poor health, and why I would want to go to the penitentiary, just in order to protect somebody else."

The testimony seems to have been given voluntarily and with the knowledge that it would probably result in his own conviction and sentence to the penitentiary. Since his testimony was given in response to questions by his own attorney, it must be assumed that he had been fully advised as to his constitutional privilege.

[5] There was no error in permitting the official reporter to refresh his memory from his shorthand notes. (*People* v. *Sexton*, 132 Cal. 39, [64 Pac. 107].)

[6] The failure of the court to give the jury a form of verdict of burglary of the second degree was not error. The information charged the commission of the burglary in the night-time and, hence, a verdict of burglary of the second degree would have been void. (*People* v. *Smith*, 136 Cal. 207, [68 Pac. 702].)

[7] Failure to provide separate rooms for the male and female jurors, if there was such failure, cannot be held to have prejudiced the rights of the defendant, in the absence of a showing to that effect. The law requires that the jurors be kept together during their deliberations. (*People* v. *Adams*, 143 Cal. 208, [101 Am. St. Rep. 92, 66 L. R. A. 247, 76 Pac. 954].) Since the Adams case was decided, section 1135 of the Penal Code has been amended (Stats. 1919, p. 1033) by adding the provision that the "board of supervisors shall provide a room for the female members of the jury which shall be separate and apart from the room provided for the male members." This amendment, however, must be read in connection with the amendment made at the same session of the legislature (Stats. 1919, p. 304) to section 1128 of the Penal Code, which provides "that when the jury is composed of both men and women, in the event that it shall become necessary to retire for the night, the women must be kept in a room or rooms separate and apart from the men."

There is no conflict between these amendments and, read together, they are in harmony with what has always been the law, that jurors must be kept together during their deliberations.

The record further shows that separate rooms were provided for the men and women on the jury in the event of their retirement for the night.

Exception is taken to the statements made by the district attorney in his closing argument to the jury. The record discloses the following: "Mr. Landram: I want to mention briefly a few of the circumstances of the case, and before I go further, I want to make some reference to a statement by Mr. Ward, with reference to a conversation had by myself and Mr. Barrios in the county

jail; Mr. Ward's statement was, that I said to Mr. Barrios, 'if you tell the truth, I will send you up for perjury.' You remember, though, in the reading of that testimony, Mr. Ward himself by his question limited the matter with reference to the perjury to the statement made, 'if you testify that Tappio and Blanco were not there, he would send you up for perjury.' And that, ladies and gentlemen, is a fact, Tappio and Blanco, I believe the evidence in that case, showed conclusively, were there and I believe when this defendant testified in that case, they were not there, he was deliberately perjuring himself— Mr. Ward (Interrupting): I assign that statement as misconduct and ask the court to instruct the jury to disregard the statement. The Court: The jury have already been instructed; they are not bound by any statement made by counsel on either side. Of course, this is a mere conclusion of the district attorney. If he attempts to state anything outside of the record, it is merely a conclusion and it is not binding. The jury are to make their own conclusions received from the evidence, and they are not bound by any conclusions of anyone else. Mr. Landram (Continuing): I am not trying to enforce my opinion in that regard upon any of you jurors. This is a matter for you, thinking as I do, it would have been my duty if that jury convicted these men, to have charged this man with perjury— Mr. Ward (Interrupting): I assign that as misconduct, and ask the court to instruct the jury to disregard it. The Court: Well, the jury will disregard all statements made by counsel on either side, that have nothing to do with this case.''

The district attorney seems to have made such statements in defending himself against charges by counsel for the defendant who had said that the district attorney had told the defendant that "if he testified upon the trial of that case, he would send him up for fourteen years for burglary and fourteen years for perjury; now, in what sense was the testimony of the witness voluntary or made without any threats or intimidation?" The district attorney was apparently trying to show that counsel's charge was not supported by the evidence. The question whether the defendant's testimony had been voluntarily given was a legitimate subject of argument before the jury. In view of the evident purpose of the district attorney, which the

jurors must have understood, and the admonition of the court, it does not appear that the defendant's rights were prejudiced by the statements.

The other assignments of errors are incidental to those discussed and are sufficiently disposed of without further consideration.

The judgment and orders appealed from are affirmed.

Burnett, J., and Hart, J., concurred.